**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 05:16 PM August 8, 2013**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
|  | ) | CASE NO. 11-61426 |
| MARTIN L. MYERS, | ) |  |
|  | ) | JUDGE RUSS KENDIG |
| Debtor. | ) |  |
|  | ) | **MEMORANDUM OF OPINION (NOT** |
|  | ) | **INTENDED FOR PUBLICATION)** |
|  | ) |  |

Now before the Court is Trustee's motion for an in camera inspection and for an order to compel production of documents, filed on March 6, 2013.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

This matter arises in the chapter 7 bankruptcy of Martin L. Myers ("Myers" or "Debtor"). Anthony J. DeGirolamo, the chapter 7 trustee ("Trustee"), issued numerous subpoenas in this case, including at least one to Scott Snow. Scott Snow serves as accountant to Debtor and his

1

non-debtor wife, Karen Myers. In response to the subpoena, Debtor and Karen Myers[1] oppose Trustee's discovery of documents and produced to Trustee a privilege log which designates 1790 pages of documents asserted to be protected by either the attorney-client privilege or the work product doctrine.

Trustee filed the motion for an in camera inspection and for an order to compel production of documents ("in camera motion") requesting that all 1790 pages of the documents be subject to an in camera inspection by the Court to determine the applicability of the attorney-client privilege and work product doctrine. Trustee argues four main points to support his in camera motion. First, attorney-client privilege does not apply to the documents because the documents were revealed to non-privileged parties, the communications were not made between privileged parties, and the communications were not made with the expectation of confidentiality. Second, the work product doctrine does not apply because Debtor and Karen Myers do not have standing to assert this protection and, even if Debtor and Karen Myers had standing, it must be established that the documents were produced in anticipation of the current litigation. Third, Debtor and Karen Myers waived any protection of the documents by asserting defenses of "advice of professionals" and good faith beliefs. Fourth, even if attorney-client privilege and the work product doctrine apply, they are subject to the crime-fraud exception, based on the fraudulent acts of Debtor and Karen Myers, and should be discoverable.

Debtor and Karen Myers filed a joint response to the in camera motion on March 13, 2013. In the response, they oppose the request for the in camera inspection, arguing that Trustee has not demonstrated the need for in camera review of the documents. In addition, they argue that the attorney-client privilege and work product doctrine apply, that they have not waived these protections either through disclosure to Scott Snow or through assertion of certain defenses, and that the crime-fraud exception does not apply. Specifically, they argue that case law supports application of the attorney-client privilege when the attorney employs the accountant to assist the attorney in giving legal advice. Further, they argue that the documents for which the work product doctrine is asserted are communications between Myers' counsel and Scott Snow that relate to Myers' bankruptcy petition and related litigation.

Trustee filed a reply to the joint response on March 18, 2013. In the reply, Trustee argues that Debtor and Karen Myers fail to explain how documents that were disclosed to third parties can be considered privileged and how Debtor and Karen Myers, as adversaries, can assert the same documents are privileged as to each of them. Further, Trustee argues that Scott Snow was not employed by Debtor's counsel and Karen Myers' counsel for necessary assistance in this matter or any pending litigation and, thus, the documents cannot be considered privileged. Debtor and Karen Myers also lack standing to assert the work product doctrine because Scott Snow, the subpoenaed party, does not resist production. Trustee also filed an affidavit, signed by Attorney Gordon D. Woolbert, II, with respect to the exhibits referenced in the in camera motion.

---

[1] Karen Myers is involved in the litigation concerning the bankruptcy estate because she filed a proof a claim (#19-1) in the amount of $4,162,863.30 and filed a pending motion to compel abandonment of Debtor's interest in Double M, Ltd.

On the privilege log submitted with both Trustee's in camera motion and the joint response, there are 132 documents listed. All of the documents are claimed to be subject to attorney-client privilege and 123 of the documents are claimed to be subject to the work product doctrine. Also included on the privilege log is the date of each document, the recipient of each document, and a short description of each document.

On May 2, 2013, the Court entered an order granting in part Trustee's motion for in camera inspection, which provided Debtor and Karen Myers thirty (30) days to hand deliver all documents claimed as privileged directly to chambers. On May 31, 2013, Debtor and Karen Myers produced the documents to the Court for an in camera inspection.

## LAW AND ANALYSIS

I.   Attorney-Client Privilege

"It is a general rule that confidential communications between an attorney and his client, made because of the professional relationship and concerning the subject matter of the attorney's employment, are privileged from disclosure, even for the purposes of the administration of justice." United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir. 1964). Attorney-client privilege applies to documents as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except [where] the protection be waived.

Id.; accord Reed v. Baxter, 134 F.3d 351, 355-56 (6th Cir. 1998).

The burden of establishing attorney-client privilege rests with the party asserting it. United States of America v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999); accord United States of America v. Krug, 379 Fed. Appx. 473, 479 (6th Cir. 2010); Vancoppenolle v. Sun Pharmaceutical, Inc., No. 3:08 CV 2797, 2012 U.S. Dist. LEXIS 86135, 2 (N.D. Ohio June 21, 2012); In re Cardinal Fastener & Specialty Co., Inc., No. 11-15719, 2013 Bankr. LEXIS 452, 15 (Bankr. N.D. Ohio Feb. 4, 2013). Debtor and Karen Myers assert that all of the documents on the privilege log are subject to attorney-client privilege. Thus, Debtor and Karen Myers hold the burden of establishing that the documents contained on the privilege log are subject to attorney-client privilege.

Trustee's in camera motion argues that the attorney-client privilege does not apply to the documents because, since the documents were revealed to a third party, privilege was waived. The third party is mainly Scott Snow, but also other parties including a bookkeeper, a banker, an account representative, and opposing counsel in other litigation. [2]

---

[2] Throughout this opinion, when the Court refers to Scott Snow, the Court means both Scott Snow and other

3

Debtor and Karen Myers argue that the attorney-client privilege applies because Scott Snow prepared the documents at the attorneys' request and Scott Snow acted as an agent for Debtor and Karen Myers during communications with their counsel. In addition, they argue that disclosure of privileged documents to an accountant does not waive attorney-client privilege.

The attorney-client privilege protects only confidential communications between the attorney and client and does not protect communications that the attorney or client has with a third party. Hilton-Rorar v. State & Fed. Commc'ns, Inc., No. 5:09-CV-01004, 2010 U.S. Dist. LEXIS 36121, 14 (N.D. Ohio 2010) (citing Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977)). In limited circumstances, the attorney-client privilege has been extended to communications between attorneys, clients, and accountants. See United States v. Kovel, 296 F.2d 918, 922 (2d. Cir. 1961); accord In re OM Group Sec. Litig., 226 F.R.D. 579, 589 (N.D. Ohio 2005) (recognizing extension of attorney-client privilege to "memoranda and working papers prepared by an accountant at an attorney's request to assist the attorney in giving legal advice to the client"). Kovel drew a line to strictly limit in what circumstances the attorney-client privilege applies to communications between attorneys, clients, and accountants.

> What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service, ... or if the advice sought is the accountant's rather than the lawyer's, no privilege exists. We recognize this draws what may seem to some a rather arbitrary line between a case where the client communicates first to his own accountant (no privilege as to such communications, even though he later consults his own lawyer on the same matter) and others, where the client in the first instance consults a lawyer who retains an accountant as a listening post, or consults the lawyer with his own accountant present.

296 F.2d at 922 (citations omitted). Kovel recognizes that the line drawn is not easy to apply but is necessary to insure that the attorney-client privilege is not unduly expanded or becomes a trap. Id. at 922-23.

Later cases interpreted Kovel to limit the attorney-client privilege to instances when the accountant functions as a "translator" between the client and the attorney. In re G-I Holdings, Inc., 218 F.R.D. 428, 434-435 (D.N.J. 2003); accord Evergreen Trading, LLC v. United States, 80 Fed. Cl. 122, (Fed. Cl. 2007) ("an attorney, merely by placing an accountant on her payroll, does not, by this action alone, render communications between the attorney's client and the accountant privileged" (quoting Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002))); United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). "[T]he privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." Ackert, 169 F.3d at 139. Therefore, communications between an attorney and a third party are not privileged solely because the communication is important to the attorney's

accountants.

4

representation of the client.  Id.

It is notable, however, that the case law addressing Kovel deals with situations where the accountant acts as the attorney's agent, not where the accountant acts as the client's agent.  In instances where the accountant is acting as the client's agent,

> communications by the accountant to the attorney are viewed as equivalent to communications being made by the client to the attorney and hence are potentially covered by the attorney-client privilege.  However, that conclusion does not necessarily shield such documents from discovery.  If the documents are unprotected by privilege in the hands of the accountant or if the privilege is somehow waived other than by the communication from the accountant to the client's attorney, the documents may nonetheless be discoverable.

Evergreen Trading, 80 Fed. Cl. at 141-42 (citation omitted).  Thus, a party cannot prevent the disclosure of documents by transferring them to an attorney or an accountant.  Id. at 142.

In the instant matter, Debtor and Karen Myers do not assert or present any evidence that their attorneys retained Scott Snow to act as the attorney's agent to translate financial documents and information concerning Debtor and Karen Myers.  With respect to their argument about Kovel, Debtor and Karen Myers assert only that "Scott Snow acted as a go-between to assist their attorneys in representing them."  Absent proof that the attorneys directly retained Scott Snow to translate the documents, Kovel does not apply.

Rather, the Court interprets the relationship between Scott Snow, Debtor, Karen Myers, and their respective attorneys as one where Scott Snow served as accountant to Debtor and Karen Myers and provided information to their attorneys as Debtor's and Karen Myers' agent.  Thus, the Court reviewed the documents to ascertain which ones, if any, are privileged because Scott Snow, as agent for Debtor and Karen Myers, provided information to the attorneys.

The Court finds the documents where Scott Snow provided information to the attorneys to be subject to attorney-client privilege.  In these instances, Scott Snow was acting directly as agent to Debtor and Karen Myers and communicating to their attorneys when Debtor and Karen Myers could have communicated to their attorneys themselves.

The Court finds the documents where Scott Snow was merely copied by either Debtor, Karen Myers, or their attorneys, and where the subject was discussing litigation plans to be not subject to attorney-client privilege.  In these instances, the Court finds Scott Snow was not acting as agent to Debtor and Karen Myers and that the attorney-client privilege was waived because the communications were revealed to a third party.  Similarly, communications between only Debtor and Scott Snow or Karen Myers and Scott Snow are not subject to attorney-client privilege because the attorneys were not included in the communications and, therefore, while Scott Snow may have been acting as their agent in those instances, without an attorney included in the communications, the privilege does not apply.  Finally, in instances where Scott Snow, Debtor, or

5

Karen Myers, communicated with third parties, those documents are not subject to attorney-client privilege.

Based on the foregoing, the Court provides, as Exhibit A, which documents and portions of documents are subject to, and which are not subject to, attorney-client privilege.

## II.    Work Product Doctrine

Federal Rule of Civil Procedure 26(b)(3)(A) sets forth the work product doctrine:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Federal Rule of Civil Procedure 26(b)(3)(B) protects against disclosure as follows: "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

The Sixth Circuit applies Rule 26(b)(3) as follows:

> The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. The work-product doctrine is a procedural rule of federal law .... [Federal Rule of Civil Procedure] 26(b)(3) protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative."

In re Prof'ls Direct Ins. Co., 578 F.3d 432, 438 (6th Cir. 2009) (citing Hickman v. Taylor, 329 U.S. 495, 510-14 (1947)). The work product doctrine is broader, but less secure, than the attorney-client privilege. Zigler v. Allstate Ins. Co., No. 1:06CV2112, 2007 U.S. Dist. LEXIS 26117, 7 (N.D. Ohio April 9, 2007). Since Rule 26(b)(3) covers documents that are otherwise discoverable, if a document is protected by attorney-client privilege, it is not discoverable under Rule 26(b)(3). Id. at 7-8. Documents otherwise protected by the work product doctrine may be discovered if the party seeking discovery establishes a substantial need and undue hardship in obtaining equivalent materials by other means. Fed.R.Civ.P. 26(b)(3)(A)(ii); id. at 7. However, opinion work product, i.e. materials reflecting the attorney's mental impressions, opinion, conclusions, judgments or legal theories, is not discoverable. Fed.R.Civ.P. 26(b)(3)(B); accord Randleman v. Fidelity Nat'l Title Ins. Co., No. 3:06CV7049, 2008 U.S. Dist. LEXIS 88905, 6 (N.D. Ohio Oct. 21, 2008).

6

The protection of Rule 26(b)(3) is limited to one who is a party to the litigation in which discovery is sought. Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., No. 93-3084, 1994 U.S. App. LEXIS 3828, at 11-12 (6th Cir. 1994). Thus, "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected ... ." Id. at 12 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 201-2).

A burden shifting structure is employed to determine if documents are protected by the work product doctrine and, if protected, whether they are discoverable regardless of the protection. First, the party seeking discovery must show that the materials are relevant to the litigation and are not privileged. Hadi v. State Farm Ins. Co., No. 2:07-CV-60, 2007 U.S. Dist. LEXIS 89788, 4 (S.D. Ohio Nov. 26, 2007). Second, once this burden is met, the objecting party must show that the material was prepared in anticipation of litigation. Id. at 4-5. Finally, once that burden is met, the burden shifts back to the requesting party to establish a substantial need for the materials and to show that the party is unable absent undue hardship to obtain its substantial equivalent of the materials by other means. Id. at 5.

Courts must consider two questions to determine whether a document was prepared "in anticipation of litigation": "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." Prof'ls Direct Ins. Co., 578 F.3d at 439 (citing United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir. 2006)); Official Comm. of Admin. Claimants v. Bricker, No. 4:05 CV 2158, 2011 U.S. Dist. LEXIS 49504, 14 (N.D. Ohio May 9, 2011). A document can both be prepared in anticipation of litigation and also serve an ordinary business purpose without being deprived of protection, but the burden is on the party asserting protection to show that the driving force behind the preparation of the documents was the anticipated litigation. Prof'ls Direct Ins. Co., 457 F.3d at 439 (citing Roxworthy, 457 F.3d at 595).

Trustee argues that Debtor and Karen Myers lack standing to assert work product doctrine because the documents are sought from Scott Snow, a non-party to the current litigation. Further, Trustee argues that Debtor and Karen Myers fail to meet the burden to demonstrate that the documents are work product protected. Debtor and Karen Myers do not address Trustee's standing argument, but assert that the documents are subject to the work product doctrine because they contain the conclusions, legal theories, mental impressions, or opinions of their respective counsel.

Trustee is correct that Scott Snow is not a party to this litigation. Having found that Scott Snow acted as Debtor and Karen Myers' agent, Debtor and Karen Myers, as parties in the current litigation in which discovery is sought, have standing to assert work product doctrine protection to documents in Scott Snow's possession, including communications between Scott Snow and themselves, between Scott Snow and their attorneys, as well between themselves and their attorneys. Fed. R. Civ. P. 26(b)(3)(A). Thus, Debtor and Karen Myers have standing to assert work product doctrine with respect to the documents requested by Trustee from Scott Snow.

7

Trustee bears the first burden to establish that the documents are relevant to the litigation. The Court finds that Trustee has established the relevancy of the documents because Debtor and Karen Myers did not object to production on the basis of relevancy. Having said that, not all of the documents are discoverable under the work product doctrine because the Court has determined that some of the documents are protected by the attorney-client privilege. The documents that the Court determined are privileged, as set forth on Exhibit A, are not discoverable under the work product doctrine regardless of whether the work product doctrine would otherwise deem them discoverable unless the Court finds a waiver or exception to the attorney-client privilege.

The burden then shifts to Debtor and Karen Myers to establish that the documents were prepared in anticipation of litigation or trial and that the subjective anticipation of litigation was reasonable. The Court reviewed the documents, applying the standard set forth above, to determine which documents were prepared in anticipation of litigation. The Court finds that the majority of these documents directly related to litigation preparation and were not prepared in the regular course of business. Moreover, the Court finds that the subjective anticipation of litigation was reasonable given the financial and legal situation of Debtor both before the filing of Debtor's bankruptcy and during the pendency of this bankruptcy case. Documents that the Court found to be prepared in the ordinary course of business are not subject to the work product doctrine. The Court sets forth in Exhibit A which documents are protected by, and which are not protected by, the work product doctrine.

Despite finding that a majority of the documents are protected by the work product doctrine, Trustee may still be able to discover these documents if he can demonstrate a genuine and substantial need for the documents and cannot acquire the information through alternative sources without undue hardship. Trustee argues that his need is genuine and substantial as Scott Snow's knowledge of Debtor's and Karen Myers' financial picture is vital and in many instances the only source of information regarding their assets and transactions. While Scott Snow may have vital information regarding Debtor and Karen Myers' financial picture, including assets and transactions, Trustee has not demonstrated, or argued, that he cannot acquire this information through alternative sources without undue hardship. The main alternate source of information that the Court references is the deposition of Scott Snow. It is the Court's understanding that Trustee plans to depose Scott Snow following the Court's in camera review and as such there is no basis to believe at this time that an undue hardship exists. Absent a showing that the alternative sources for the information would cause an undue hardship on Trustee, the Court finds that Trustee has not met the final burden to establish that the documents should be discoverable despite being protected by the work product doctrine.

III.    Waiver of Attorney-Client Privilege and Work Product Doctrine

Trustee asserts that Debtor and Karen Myers waived attorney-client privilege and work product doctrine due to their reliance on certain affirmative defenses. Specifically, Debtor raised the affirmative defense of "advice of professionals" and Karen Myers bases her claim upon a good faith belief that it is rightfully hers.

8

Debtor argues that the affirmative defense of "advice of professionals" was raised in an adversary proceeding while Trustee's in camera motion is pending in the main case and, therefore, Debtor did not waive the attorney-client privilege for purposes of the main case. Debtor also argues that the "advice of professionals" defense is not directed at advice rendered by Scott Snow. Karen Myers does not specifically address Trustee's position except to state there is no support for this position and it should be dismissed as being unsupported by law.

"[A] party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." Rhone-Poulenc Rorer v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994); accord Beery v. Thomson Consumer Elecs., Inc., 218 F.R.D. 599, 604 (S.D. Ohio 2003). When clients affirmatively place the advice of counsel in issue, the client initiates the examination of facts relating to that advice. Rhone-Poulenc Rorer, 32 F.3d at 863; Beery, 218 F.R.D. at 604. "[I]n leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege." Rhone-Poulenc Rorer, 32 F.3d at 863. "Once the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums." Beery, 218 F.R.D. at 604 (quoting Genentech, Inc. v. United States ITC, 122 F.3d 1409, 1416 (Fed. Cir. 1997)).

It is clear to the Court that Debtor waived attorney-client privilege when he raised the affirmative defense of advice of professionals. Despite the fact that the defense was raised in a related adversary proceeding, not the main bankruptcy case, once Debtor waived attorney-client privilege, he waived it for all purposes and in all forums. Further, there is no support for Debtor's argument that the professional at issue in the affirmative defense is not Scott Snow and, therefore, there can be no waiver. The privileged documents are privileged because of the inclusion of communications to and from attorneys and their client or the client's agent. Assertion of the advice of professionals defense waives the attorney-client privilege as to communications between both Debtor and his attorney and Debtor's agent and Debtor's attorney.

The Court rejects Trustee's argument that Karen Myers waived attorney-client privilege either through a good faith belief in her claim or through her statement that she made her claim only after an analysis of her situation and review of the law. These assertions by Karen Myers do not rise to the level of putting her attorney's advice in issue in the litigation at the present time. For these reasons, the Court finds that Karen Myers did not waive the attorney-client privilege.

The rule for waiver of attorney-client privilege does not necessarily mean a waiver of the work product doctrine. Rhone-Poulenc Rorer, 32 F.3d at 866. Protection of work product belongs to the professional, not the client. Id. Trustee fails to cite any case law to support a waiver of the work product doctrine by an assertion of an affirmative defense of advice of professionals by Debtor. The Court is unable to find any basis to support a waiver of the work product doctrine because of Debtor's actions.

9

IV.    Crime-Fraud Exception

Communications made between a client and the attorney for the "purpose of furthering the commission of a future or present crime or fraud are not protected from disclosure by the attorney-client privilege." Miller v. Miller, 247 B.R. 704, 711 (Bankr. N.D. Ohio 2000) (citing United States v. Zolin, 491 U.S. 554, 563, (1989)). The Sixth Circuit applies a two-part test to determine whether the crime-fraud exception should be invoked. First, the party seeking disclosure must make a prima facie showing that a serious crime or fraud occurred. Miller, 247 B.R. at 711 (citing United States v. Collis, 128 F.3d 313, 320 (6th Cir. 1997)). To meet this burden, the Sixth Circuit requires evidence that "a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." Collis, 128 F.3d at 321 (quoting In re Antitrust Grand Jury, 805 F.2d 155, 166 (6th Cir. 1986)). Second, the party must also establish a relationship between the communication at issue and the prima facie violation. Miller, 247 B.R. at 711 (citing Collis, 128 F.3d at 320). The second element is typically hard to prove because the communications cannot be known until the attorney-client privilege is lifted, which means that an in camera review of the documents may be necessary to both protect the privilege and further justice.

With respect to the work product doctrine, the Sixth Circuit has found that it is subject to the crime-fraud exception. In re Grand Jury Subpoenas, 454 F.3d 511, 520 (6th Cir. 2006). "[T]he strong policy disfavoring client fraud requires that the client relinquish the benefit he would gain from the work product doctrine." In re Special September 1978 Grand Jury (II), 640 F.3d 49, 63 (7th Cir. 1980). However, the attorney's mental impressions, conclusions, opinions, and legal theories are still protectable "to avoid an invasion of the attorney's necessary privacy in his work, an invasion not justified by the misfortune of representing a fraudulent client." Id.

Trustee argues that he has met the two-part test. First, Trustee sets forth detailed facts regarding four alleged frauds that he asserts Debtor and/or Karen Myers perpetrated. These include: 1) Debtor's and Karen Myers' fraudulent conveyance of various funds right before Debtor filed bankruptcy; 2) Debtor's fraudulent nondisclosure of Debtor's interest in Primary Colors; 3) Debtor's fraudulent nondisclosure of Debtor's interest in Marmat; and 4) evidence that Karen Myers' claim is fraudulent. Trustee also references additional frauds that he suspects but is unable to set forth detailed facts at present. Second, Trustee argues that the documents sought are reasonably related to the alleged frauds based upon the descriptions provided of the documents on the privilege log.

Debtor and Karen Myers argue vehemently against the alleged frauds that Trustee asserts. The crux of their argument is that Trustee fails to establish the prima facie showing required under the first prong of the two-part test.

A.  *Fraudulent Conveyance of Assets Before Bankruptcy Filing*

Trustee argues that Debtor and Karen Myers, after entry of the state court judgment against

10

Debtor, transferred funds from Debtor's accounts to other accounts in which he had no interest.[3] Trustee specifically lists one $500,000.00 transfer that Debtor and Karen Myers transferred from a joint PNC account to a Wells Fargo account in Karen Myers' name only. Trustee states this transfer occurred six (6) days after entry of the state court judgment against Debtor and fifty-three (53) days before Debtor filed bankruptcy.

Debtor and Karen Myers dispute that this transfer represents fraud because it was disclosed on Debtor's bankruptcy petition and because Karen Myers initiated the transfer for many purposes, including payment of Debtor's legal fees and documented settlement payment with creditors. They also argue that Debtor's counsel met with and discussed the transfer with Trustee and his counsel before the § 341 meeting of creditors.

### B. Nondisclosure of Debtor's Interest in Primary Colors

Trustee argues that Debtor has or had a legal or equitable interest in Primary Colors and failed to disclose that interest. Trustee argues that the evidence overwhelmingly supports that Debtor was more than just a guarantor for Primary Colors, including: 1) Debtor signed as Primary Colors' president in association with financing; 2) another Primary Colors' principal, Jeff Davis, certified Debtor's role as president to U.S. Bank; 3) Scott Snow believed Debtor owned 40% of Primary Colors in 2010; 4) Debtor flew on Primary Colors' behalf and at their expense in 2008; 5) Scott Snow believed Debtor had interests in Primary Colors that he should transfer to his daughters in 2008; and 6) Jeff Davis told a product line coordinator that Debtor was a stakeholder in Primary Colors.

Debtor and the admitted owners of Primary Colors dispute that he has or had an interest in Primary Colors. Debtor asserts that Trustee's belief of ownership in Primary Colors is based on cryptic notes of Scott Snow. Debtor admits he took steps to help the owners, his friends, with Primary Colors mainly through a personal guarantee of a line of credit.

### C. Nondisclosure of Debtor's Interest in Marmat

Trustee argues that Debtor has or had a legal or equitable interest in Marmat similar to Primary Colors. Trustee asserts that Debtor admitted the following in relation to Marmat: 1) Scott Snow's notes that indicate that Debtor held a 40% ownership in Marmat in September 2008; 2) Debtor's statement to an account representative in 2007 that he owned a Hong Kong import company; and 3) Communications with Debtor's bookkeeper informing her of Debtor's interest in Marmat.

Debtor asserts that Trustee relies only on the cryptic notes of Scott Snow in his allegations of ownership of Marmat. Debtor states that Marmat was a potential entity to be formed in connection with Pet Brands, but that it was never formed and rather Pet Brands itself formed a Hong Kong office to handle its Asian trading needs.

---

[3] Trustee's full claim against Debtor is in related adversary proceeding #12-6042, count 5.

11

### D. Evidence that Karen Myers' Claim is Fraudulent

Trustee argues that Karen Myers' Claim is not based on any financial arrangement and is designed to make estate administration difficult, utilizing legitimate legal processes to leverage various benefits in the bankruptcy context. Trustee bases this assertion on the following: 1) Debtor's bankruptcy schedules do not indicate that Double M was a joint asset or that Karen Myers might have an interest in Double M; 2) Scott Snow's telephone notes indicating that Debtor and Karen Myers utilize divorce law to make a claim to Double M and against the bankruptcy estate of Debtor; 3) Debtor's e-mail exchange that indicates Karen Myers' claim was designed to make the bankruptcy estate messy; and 4) Karen Myers' claim itself which does not explain the basis of the claim.

Karen Myers argues that Trustee's allegations are unfounded based on notes that are taken out of context and an e-mail that was not written by Karen Myers. Further, Karen Myers argues that when making her claim she delivered a box of documents to Trustee that substantiate her claim and invited Trustee to discuss the claim with her and Scott Snow.

### E. Evidence Suggesting Further Fraud

Trustee argues that some documents received from Scott Snow suggest that a million dollar promissory note was to be paid as late as January 2011 to Debtor. Trustee has received documents which indicate payments received after the filing of the bankruptcy. Some of the documents being withheld are from pages near these documents, indicating that more information may be available.

Debtor disputes Trustee's final allegation primarily on the basis that the payments Trustee references are not related to the promissory note but are related to a consulting agreement that served as replacement income for Debtor after he lost his position with Pet Brands.

### F. Analysis of Trustee's Prima Facie Showing That a Sufficiently Serious Crime or Fraud Occurred

Trustee's allegations of fraudulent acts, if proven, constitute serious violations of the Bankruptcy Code. In several instances, Trustee sets forth facts that the Court finds may lead a prudent person to have a reasonable basis to suspect fraud by Debtor and Karen Myers.

Specifically, Trustee presents strong evidence to support the alleged nondisclosure of a pre-petition transfer of assets. Debtor and Karen Myers do not deny either the transfer or the nondisclosure. While Debtor and Karen Myers set forth defenses against the alleged fraudulent nature of the transfer, Trustee's evidence on its face may lead a reasonable person to suspect fraud. The Court finds that conclusion to be entirely reasonable and possible at least until all facts are presented and arguments are completed.

Similarly, Trustee presents sufficient evidence of Debtor's potential nondisclosed interest

12

in Primary Colors to establish a reasonable basis to suspect fraud. This evidence establishes that Debtor was involved with Primary Colors to a certain degree, including guaranteeing the entity's debt, and based on notes of Debtor's accountant that Debtor may have had an interest in Primary Colors. It does not make logical sense that Debtor's accountant would believe Debtor held an interest in an entity if he did not hold such an interest. This, on its face, directly implies fraud and, thus, Trustee's evidence meets the burden of the first element.

Trustee also establishes a reasonable basis to suspect fraud with respect to Debtor's potential nondisclosed interest in Marmat. The evidence for Debtor's interest in Marmat is weaker than with Primary Colors at this phase in Trustee's discovery. As with Primary Colors, the primary evidence is that Debtor's accountant believed Debtor held an interest in Marmat. Thus, Trustee has met the first element.

As to Karen Myers' fraudulent claim, Trustee has not met his burden of the first element. The majority of the facts presented seek to establish that Trustee believes Karen Myers claim is fraudulent and intended to complicate the bankruptcy estate administration. These facts do not speak to Karen Myers' intent or her actions with respect to the claim. While Trustee may indeed be able to establish that Karen Myers' claim is fraudulent, these facts are not sufficient to establish a reasonable basis to suspect fraud.

Similarly, Trustee has not met his burden with respect to the additional evidence that may suggest fraud related to a promissory note. There are simply not enough facts presented to establish a reasonable basis to suspect fraud.

With respect to the second element, whether there is a relationship between the communication at issue and the prima facie violation, the Court believes the three prima facie violations that Trustee sets forth rise to the level necessary to justify an in camera review of the documents to determine if exceptions to attorney-client privilege and the work product doctrine are warranted. This Court has reviewed the documents, applying the standards set forth above, to documents previously found to be subject to either attorney-client privilege or work product doctrine to determine if there is a relationship between the communications contained in the documents and the three prime facie violations. Where there is found to be a relationship, the document is excepted from the attorney-client privilege and, unless the communication is opinion work product, the document is excepted from the work product doctrine. The Court's determination of which documents, if any, are excepted from the attorney-client privilege and the work product doctrine under the crime-fraud exception are set forth in Exhibit A.

## CONCLUSION

Based on the foregoing, the Court sets forth Exhibit A which details the application of the foregoing law to each of the documents and specifies the documents that are discoverable by Trustee. The Court was unable to view Document #52 (Bates Numbers 010908 – 010999) and, therefore, Debtor and Karen Myers must provide Document #52 to the Court for in camera inspection in accordance with the findings of this Memorandum of Opinion. An order will be

13

entered simultaneously with this opinion.

#        #        #

**Service List:**

Chrysanthe E Vassiles
Gordon D. Woolbert, II
Black McCuskey Souers and Arbaugh
220 Market Ave., South, Suite 1000
Canton, OH 44702

Richard K Stovall
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH 43215

Susan L. Rhiel
Rhiel & Associates Co., LPA
394 East Town Street
Columbus, OH 43215

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 000529, | 000004 - 000006 | 000529, | 000529, | ███ | ███ | ███ | 000004 - 000006 | |
| 3 | 000533 - 000535 | 000530 - 000532 | 000533 - 000535 | | ███ | ███ | ███ | 000535 | |
| 4 | 000539 - 000544 | | 000539 - 000544 | 000540 - 000541 | ███ | ███ | ███ | 000539 - 000544 | *- Redact 12/22/2011 Note, **- Redact 11/28/2011 Note, *** Unredacted |
| 5 | 000594*, 000595** | 000594*, 000595**, 000596, 000597 | 000594 - 000595 | | ███ | ███ | ███ | 000594 - 000595*** | |
| 6 | | 005725 - 005877 | | | 005725 - 005877 | ███ | 005725 - 005877 | | |
| 7 | 009165 - 009167 | | 009165 - 009167 | 009165 - 009166 | 009165 - 009167 | | 009165 - 009166 | 009165 - 009166 | |
| 8 | 009168 - 009171 | | 009168 - 009171 | 009168 - 009169 | 009168 - 009171 | | 009168 - 009169 | 009168 - 009169 | |
| 9 | 009238 - | | 009238 - | | 009238 - | | | | |
| 10 | 009269 - 009276 | | 009269 - | 009274 - | 009269 - 009276 | | 009274 - | 9274 | |
| 11 | 009277 - 009285 | | 009277 - 009285 | | 009277 - 009285 | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 12 | | 009295 - | | | 009295 - | | | | |
| 13 | | 009300 - 009308 | | | 009300 - 009308 | | | | |
| 14 | 009311 - 009312 | | 009311 - 009312 | | | | | 009311 - 009361 | |
| 15 | | 009343 - | | | 009343 - | | | | |
| 16 | | 009360 - 009361 | | | | 009630 - 009631 | | 009360 - 009361 | |
| 17 | | 009420 - 009424 | | | 009420 - 009424 | | | | |
| 18 | | 009476 - 009500 | | | 009476 - 009500 | | | | |
| 19 | | 009504 - | | | | 009504 - | | 009504 - | |
| 20 | | 009524 - 009525 | | | 009524 - 009525 | | | | |
| 21 | | 009530 - 009532 | | | | 009530 - 009532 | | 009530 - 009532 | |
| 22 | | 009570 - 009573 | | | 009570 - 009573 | | | | |
| 23 | | 009798 - 009799 | | | 009798 - 009799 | | | | |
| 24 | | 009832 - 009833 | | | 009832 - 009833 | | | | |
| 25 | | 009903 - 009904 | | | 009903 - 009904 | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 26 | | 009941 - 009942 | [redacted] | [redacted] | 009941 - 009942 | | [redacted] | | |
| 27 | | 010125 - 010134 | [redacted] | [redacted] | 010125 - 010134 | | [redacted] | | |
| 28 | | 010240 - 010250 | [redacted] | [redacted] | 010240 - | | [redacted] | | |
| 29 | | 010258 - | [redacted] | [redacted] | | | [redacted] | | |
| 30 | | 010259 - 010265 | [redacted] | [redacted] | | | [redacted] | | |
| 31 | | 010266 - | [redacted] | [redacted] | 010266 - | | [redacted] | | |
| 32 | | 010290 - 010294 | [redacted] | [redacted] | | 010290 - 010294 | [redacted] | 010290 - 010294 | |
| 33 | | 010301 - | [redacted] | [redacted] | 010301 - | | [redacted] | | |
| 34 | | 010303 - 010319 | [redacted] | [redacted] | 010303 - 010319 | | [redacted] | | |
| 35 | | 010320 - 010337 | [redacted] | [redacted] | 010320 - 010337 | | [redacted] | | |
| 36 | 010338 - 010339 | | 010338 - 010339 | [redacted] | 010338 - 010339 | | | | |
| 37 | | 010391 - 010393 | | | 010391 - 010393 | | | | |
| 38 | | 010395 - 010396 | | | | 010395 - | [redacted] | 010395 - 010396 | |
| 39 | | 010397 - 010403 | | | | 010397 - 010403 | | 010397 - 010403 | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 40 | 010415 - 010418 | 010419 - 010422 | | | | 010415 - 010422, 010419 - | ███ | 010415 - 010422, 010419 - | |
| 41 | | 010423 - 010428 | ███ | ███ | | 010423 - 010428 | ███ | 010423 - 010428 | |
| 42 | 010498 - 010503 | | | | 010498 - 010503 | | | | |
| 43 | 010597 - 010600 | | | | 010597 - 010600 | | | | |
| 44 | | 010605 - 010630 | | | 010605 - 010630 | | | | |
| 45 | | 010634 - | | | 010634 - | | | | |
| 46 | | 010635 - 010675 | ███ | ███ | 010636 - 010675 | 010635 - | | 010635 - | |
| 47 | 010690 - 010692 | 010682 - 010689, 010693 - 010701 | | | 010682 - 010684, 010690 - 010701 | 010685 - 010689 | | 010685 - 010689 | |
| 48 | | 010703 - 010710 | | | 010703 - 010710 | | | | |
| 49 | | 010716 - 010717 | | | 010716 - 010717 | | | | |
| 50 | | 010719 - 010725 | | | 010719 - 010725 | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 51 | 010742 - 010743 - 010756 - 010806, 010845 - 010854, 010859 - 010867, 010869 - 010874, 010878 - 010880, 010889 - 010899 | 010728 - 010741, 010744 - 010755, 010807 - 010844, 010855 - 010858, 010868, 010875 - 010877, 010881 - 010888, 010900 - 010901 | | | 010728 - 010738, 010740 - 010747, 010749 - 010750, 010756 - 010806, 010832 - 010833, 010843 - 010845 - 010854, 010859 - 010867, 010869 - 010874, 010878 - 010880, 010889 - 010899 | 010739, 010748, 010751 - 010755, 010807 - 010831, 010834 - 010842, 010844, 010855 - 010858, 010868, 010875 - 010877, 010881 - 010888, 010900 - 010901 | | 010739, 010748, 010751 - 010755, 010807 - 010831, 010834 - 010842, 010844, 010855 - 010858, 010868, 010875 - 010877, 010881 - 010888, 010900 - 010901 | |
| 52 | Not Inspected | Not Inspected | Not Inspected | Not Inspected | Not Inspected | Not Inspected | Not Inspected | Not Inspected | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) **NOT** Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) **NOT** Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 53 | 011167 - 011171 | 011012 - 011166, 011172 - 011180 | ■ | ■ | 011012 - 011015, 011086 - 011087, 011090 - 011091, 011093, 011105 - 011107, 011167 - 011180 | 011016 - 011085, 011088 - 011089, 011092, 011094 - 011104, 011108 - 011165 | | 011016 - 011085, 011088 - 011092, 011094 - 011104, 011108 - 011165 | |
| 54 | | 011183 - 011211 | ■ | ■ | 011206 - 011211 | 011183 - 011205 | | 011183 - 011205 | |
| 55 | 011213 - 011226, 011336 - 011367, 011397 - 011412, 011414 - 011457, 011605 - 011613 | 011227 - 011335, 011368 - 011396, 011413, 011458 - 011604 | | | 011213 - 011226, 011336 - 011337, 011397 - 011412, 011414 - 011430, 011434 - 011457, 011605 - 011613 | 011227 - 011335, 011338 - 011396, 011413, 011431 - 011433, 011458 - 011604 | | 011227 - 011335, 011368 - 011396, 011413, 011458 - 011604 | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) **NOT** Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) **NOT** Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 56 | 011619 - 011624 | | | ■ | 011619 - 011624 | | | | |
| 57 | | 011625 - 011627 | | | | 011625 - 011627 | | 011625 - 011627 | |
| 58 | 011687 - 011689 | | | | 011687 - 011689 | | | | |
| 59 | | 011690 - | | | 011690 - | | | | |
| 60 | | 011697 - | | | 011697 - | | | | |
| 61 | | 011708 - | ■ | ■ | 011708 - | | | | |
| 62 | 011721 - 011725 | | | | 011721 - 011725 | | | | |
| 63 | | 011727 - 011738 | ■ | ■ | 011727 - 011738 | | | | |
| 64 | | 011768 - 011769 | ■ | ■ | 011769 - | 011768 - | | 011768 - | |
| 65 | | 011771 - 011773 | 011771 - 011773 | | 011771 - 011773 | | | | |
| 66 | | 011788 - 011789 | 011788 - 011789 | | | 011788 - 011789 | ■ | 011788 - 011789 | |
| 67 | 011807 - 011818 | | 011807 - 011818 | | 011807 - 011818 | | | | |
| 68 | | 011832 - 011854 | | | 011832 - 011854 | | | | |
| 69 | 011855 - 011859 | | | | 011855 - 011859 | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 70 | 011889 - 011892 | | | | 011889 - 011892 | | | | |
| 71 | | 011922 - 011925 | | | 011922 - 011925 | | | | |
| 72 | 011955 - 011957 | | | | 011955 - 011957 | | | | |
| 73 | | 011961 - 011965 | | | 011961 - 011965 | | | | |
| 74 | | 011966 - 011971 | | | 011966 - 011971 | | | | |
| 75 | 011972 - | | | | 011972 - | | | | |
| 76 | | 011973 - 011974 | | | 011973 - 011974 | | | | |
| 77 | | 011975 - 011990 | | | 011975 - 011990 | | | | |
| 78 | | 012075 - 012090 | | | | 012075 - | | 012075 - | |
| 79 | | 012091 - | | | | | | | |
| 80 | 012106 - 012118 | | | | 012106 - 012118 | | | | |
| 81 | | 012130 - 012131 | | | | | | | |
| 82 | 012160 - 012161 | | 012160 - 012161 | | | 012160 - 012161 | | 012160 - 012161 | |
| 83 | 012166 - 012168 | 012169 - 012174 | | | 012166 - 012168 | 012169 - 012174 | | 012169 - 012174 | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 84 | 012176 - 012177 | | 012176 - | | 012176 - 012177 | | | | |
| 85 | 012219 - 012220 | | 012219 - 012220 | | 012219 - 012220 | | | | |
| 86 | 012222 - | | 012222 - | | 012222 - | | | | |
| 87 | 012223 - | | 012223 - | | | 012223 - | ■ | 012223 - | |
| 88 | 012224 - 012227 | | 012224 - 012227 | | 012224 - 012227 | | | | |
| 89 | 012248 - 012251 | | 012248 - 012251 | | 012248 - 012251 | | | | |
| 90 | 012291 - 012301 | | 012291 - 012301 | | 012291 - 012301 | | | | |
| 91 | 012597 - 012599 | 012600 - 012604 | 012597 - 012599 | | 012597 - 012604 | | | | |
| 92 | 012607 - 012610 | | 012607 - 012610 | | 012607 - 012610 | | | | |
| 93 | 012612 - | 012613 - 012616 | 012612 - | | 012612, 012614 - 012616 | 012613 - | | 012613 - | |
| 94 | 012639 - 012644 | | 012639 - 012644 | | 012639 - 012644 | | | | |
| 95 | 012645 - 012646, 012653 - 012666 | 012647 - 012652 | 012645 - 012646, 012653 - 012666 | | 012645 - 012646, 012653 - 012666 | 012647 - | | 012647 - 012652 | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 96 | 012669 - 012671, 012674 - 012678 | 012667 - 012668, 012672 - 012673, 012679 - 012683 | 012669 - 012671, 012674 - 012678 | | 012667 - 012683 | | | | |
| 97 | 012695 - 012696 | | 012695 - 012696 | | 012695 - 012696 | | | | |
| 98 | 012775 - | 012776 - | 012775 - | | 012775 - | 012776 - | | 012776 - | |
| 99 | 012861 - 012869 | | 012861 - 012869 | | 012861 - 012869 | | | | |
| 100 | 013879 - 013881 | | 013879 - 013881 | | 013879 - 013881 | | | | |
| 101 | 013899 - 013904 | | 013899 - 013904 | | 013899 - 013904 | | | | |
| 102 | 013922 - 013928 | | 013922 - 013928 | | 013922 - 013928 | | | | |
| 103 | 013889 - 013890, 013998 - 013999 | 013986 - 013988, 013991 - 013997 | 013989 - 013990, 013998 - 013999 | [black redaction box] | 013986 - 013999 | | | | |
| 104 | | 014055 - 014059 | 014055 - 014059 | | 014055 - 014059 | | | | |
| 105 | | 014064 - 014067 | 014064 - 014067 | | 014064 - 014067 | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 106 | 014078 - 014082 | | 014078 - 014082 | 014078 - 014082 | | | | | |
| 107 | 014194 - | | 014194 - | | 014194 - | | | | |
| 108 | 014306 - 014320 | | 014306 - 014320 | | 014306 - 014320 | | | | |
| 109 | 014327 - 014332 | | 014327 - 014332 | | 014327 - 014332 | | | | |
| 110 | 014333 - 014336 | | 014333 - 014336 | | 014333 - 014336 | | | | |
| 111 | 014339 - | | 014339 - | | 014339 - | | | | |
| 112 | 014384 - | | 014384 - | | 014384 - | | | | |
| 113 | 014386 - | | 014386 - | | 014386 - | | | | |
| 114 | 014405 - 014414 | | 014405 - 014414 | | 014405 - 014414 | | | | |
| 115 | 014416 - 014420 | | 014416 - 014420 | | 014416 - 014420 | | | | |
| 116 | 014424 - 014427 | | 014424 - 014427 | | 014424 - 014427 | | | | |
| 117 | 014441 - 014442 | | 014441 - 014442 | | 014441 - 014442 | | | | |
| 118 | 014452 - 014453 | | 014452 - 014453 | | 014452 - 014453 | | | | |
| 119 | 014471 - 014472 | | 014471 - 014472 | | 014471 - 014472 | | | | |
| 120 | 014737 - | | 014737 - | | 014737 - | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 121 | 014963 - 014970 | | 014963 - 014970 | | 014963 - 014970 | | | | |
| 122 | 014988 - 014989 | | 014988 - 014989 | | 014988 - 014989 | | | | |
| 123 | 014991 - 014993 | | 014991 - 014993 | | 014991 - 014993 | | | | |
| 124 | 015000 - 015001 | 015002 - 015003 | 015000 - 015001 | | 015000 - 015003 | | | | |
| 125 | | 015268 - | | ██████ | 015268 - | | ██████ | | |
| 126 | 015491 - 015498, 015504 - 015509, 015511 - 015519 | 015499 - 015503, 015510 | 015491 - 015498, 015504 - 015509, 015511 - 015519 | | 015491 - 015496, 015499 - 015501, 015504 - 015519 | 015497 -, 015498, 015502 - 015503 | | 015497 -, 015498, 015502 - 015503 | |
| 127 | | 016065 - 016066 | 016065 - 016066 | | | | | | |
| 128 | 016242 - 016245 | | 016242 - 016245 | | | 016242 - 016245 | | | |
| 129 | 016256 - 016261 | | 016256 - 016261 | | | 016256 - 016261 | | | |
| 130 | 016462 - 016470 | | 016462 - 016470 | ██████ | 016462 - 016470 | | ██████ | | |
| 131 | 016498 - 016499 | | | | | | | | |

| Document Number | Bates Number(s) Subject to Attorney-Client Privilege | Bates Number(s) NOT Subject to Attorney-Client Privilege | Bates Number(s) Deemed to Have Waived Attorney-Client Privilege | Bates Number(s) Crime-Fraud Exception Applies: Attorney-Client Privilege | Bates Number(s) Protected by Work Product Doctrine | Bates Number(s) NOT Protected by Work Product Doctrine | Bates Number(s) Crime-Fraud Exception Applies: Work Product Doctrine | Bates Number(s) Deemed Discoverable | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 132 | 016502 - 016504 | | 016502 - 016504 | | 016502 - 016504 | | | | |
| 133 | 016507 - 016511 | | 016507 - 016511 | | 016507 - 016511 | | | | |