**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 03:38 PM September 8, 2015**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MARTIN L. MYERS, | ) | CASE NO. 11-61426 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **AMENDED MEMORANDUM** |
| | ) | **OF OPINION (NOT FOR** |
| | ) | **PUBLICATION)[1]** |

    Now before the court, for the second time, is a joint motion to compromise, now styled as a motion for reconsideration and/or rehearing, filed by Trustee Anthony J. DeGirolamo ("Trustee"), Debtor Martin L. Myers ("Debtor") and Debtor's wife, Karen Myers ("Mrs. Myers"). The motion is opposed by MD Acquisition, LLC ("MDA") and Martin Designs, Inc. ("MDI"). The court held a hearing on May 5, 2015 and permitted post-hearing briefs to be filed. Also pending is Trustee's motion to strike a statement of Josiah L. Mason ("Mason"), the chapter 7 trustee of the related case of MDI.

    Subject matter jurisdiction of this matter rests in 28 U.S.C. § 1334 and the order of

---

[1] This opinion is amended to correct an error in Part IV. One slight alteration in language was also made to part III. Neither change affects the underlying decision.

1

reference, General Order 2012-7, dated April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This opinion represents the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## PROCEDURAL BACKGROUND

The original joint motion to compromise was filed on November 11, 2014. Two objections were filed, one joint objection by MDI and MDA and one by James E. Arnold & Associates, LPA ("Arnold"). The court held a hearing on December 4, 2014 and took the motion under advisement following post-hearing briefing. The court issued its opinion on January 29, 2015, denying the motion, without prejudice, after finding that Trustee failed to meet his burden of proof that the compromise was fair and equitable. Specifically, the court found Trustee presented insufficient evidence on collectability and the interest of the creditors. Regarding the latter, the court considered whether Trustee could compromise the § 727 action against Debtor and determined Trustee could, adopting a standard which included consideration of whether the public interest would be served. At the end of the opinion, the court retained Trustee's option to renew the motion in light of the court's findings.

On February 12, 2015, Trustee and the joint movants filed a motion for reconsideration and/or rehearing and presented additional evidentiary materials, including an affidavit from Trustee, a synopsis of Trustee's proposed testimony, and sealed copies of documents used by Trustee to assess the collectability of Debtor and Mrs. Myers. This motion was met with additional opposition from MDA. On March 10, 2015, the court granted the motion for rehearing and set a pretrial date, from which it entered a scheduling order. The evidentiary hearing was held on May 5, 2015. At the end of the hearing, the court entered a briefing schedule. MDA filed its brief on May 19, 2015. Trustee, Debtor and Mrs. Myers filed their briefs on June 2, 2015.

## PROCEDURAL CONSIDERATIONS

Before the court reviews the merits of the underlying compromise, it will address procedural issues.

### I. The renewed motion to compromise/motion for reconsideration

At points, MDA is confounded by the procedural progression of this matter.[2] It clearly wanted Trustee to set forth the entire theory underlying the compromise in a motion, to which it

---

[2] Its argument is outlined in its Pre-hearing Brief, ECF No. 764, and was raised again during the May 5, 2015 hearing.

could object, followed by an evidentiary hearing. The original motion followed this track but the renewed motion diverged slightly. Trustee requested rehearing, set forth his foundation during that hearing, and the court then permitted post-hearing briefing. MDA claims it was ambushed as a result, which the court finds incredible.

On March 23, 2015, following a status conference with MDA's participation, the court issued an Amended Scheduling and Trial order scheduling an evidentiary hearing. The scheduling order was entered after a conference to gauge the desires of the parties. That order provided for the submission of witness lists, stipulations, and trial briefs, as well as the exchange of documents to be introduced into evidence. Nothing prevented MDA from doing further discovery. A motion to compromise is a contested matter pursuant to Bankruptcy Rule 9014 and provides broad rights to parties. No one was prevent from exercising those rights.

As a specific example of MDA's protest, during the May 5 hearing, Trustee testified concerning Debtor's involvement with Primary Colors ("PC"). PC is owned by friends of Debtor but there were suspicions that Debtor held an equitable or concealed ownership interest in PC, supported in part by his signature as "President" on certain documents, his personal guaranty on a $750,000 note, PC's rent-free use of a building owned by Debtor, and other activities by Debtor that benefitted the business.[3] At the hearing, Trustee testified concerning Debtor's involvement with PC, indicating Debtor did work for PC, attended trade shows, and signed documents on behalf of the company. Trustee's testimony indicated that he discounted the signatures, in part because Debtor signed on pre-printed forms that contained a line for the signature of "President," and Trustee was never able to find any documentation formally appointing Debtor as President of PC. MDA objected, arguing this information should have been provided prior to the hearing. The court overruled the objection and stated that MDA could respond post-hearing. MDA was permitted to cross-examine the trustee, given an opportunity to respond after the hearing, and actually filed a post-hearing brief and a sur-reply brief.

The "notice and hearing" requirement of Federal Rule of Bankruptcy Procedure 9019 was met. Movants provided notice and an opportunity to object to the original motion. (Ntc. of Mot., ECF No. 679) MDA filed a joint objection. (Jt. Obj., ECF No. 681) The court held a hearing and allowed post-hearing memoranda. (Order Setting Post-Hearing Briefing Schedule, ECF No. 688) When movants requested a rehearing, movants again provided notice with an opportunity to object. (Ntc. of Motion, ECF No. 714) Prior to the hearing, the court held a pretrial conference, entered a scheduling order, and the parties engaged in discovery. (Scheduling and Trial Order, ECF No. 736) At the hearing, MDA was allowed to cross-examine Trustee. After the hearing, the court provided MDA an opportunity to respond. (Post-Hearing Scheduling Order, ECF No. 766) MDA filed the following documents in connection with the compromise: Jointed Limited Objection of MD Acquisition, LLC and Martin Designs, Inc. (ECF No. 681), Post-Hearing Brief of MD Acquisition in Support of Joint Limited Objection (ECF No. 691), Response and Objection of MD Acquisition, LLC (ECF No. 726),

---

3 This is an allegation found in paragraph 34(h) of Trustee's adversary proceeding against Primary Colors and others. (<u>DeGirolamo v. Primary Colors Design Corp. (In re Myers)</u>, Case No. 11-61426, Adv. No. 13-6067)

3

Pre-Hearing Brief (ECF No. 764), Post-Hearing Brief (ECF No. 769), and Post-Hearing Sur-Reply (ECF No. 778).

The court finds no impingement of due process. The joint motion for reconsideration/ rehearing was nothing more than an extension of the previous compromise.[4] The court's first opinion identified the missing components of the compromise and the motion for reconsideration/ rehearing responded to these. The issues involved were narrow and known. Trustee attached an affidavit to the renewed motion, providing a sketch of his thought process in deciding to pursue the compromise. Although more detailed, his testimony at the hearing was in accord with the affidavit and went to the heart of the two areas in which the court found against Trustee in the original motion. Prior to the hearing, MDA was given access to the sealed documents utilized to assess collectability and was able to cross-examine Trustee about the compromise at the hearing. MDA knew Trustee was going to testify on these matters. MDA not only participated in the evidentiary hearing on May 5, 2015, but was permitted to brief its counter-position following the hearing. Although the matter may not have progressed exactly as it anticipated, "the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." Systemic Recycling LLC v. City of Detroit, 2015 WL 3620267 (6th Cir. 2015) (citing Morrison v. Warren, 375 F.3d 468, 475 (6th Cir. 2004)). This requirement was met. MDA has been provided ample opportunity to respond, object and counter Trustee's decision to enter into this compromise.

Additionally, '[a] bankruptcy judge need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision.' Fishell v. Soltow (In re Fishell), 47 F.3d 1168, 1995 WL 66622, * 3 (6th Cir. 1995) (quoting In re Am. Corp., 841 F.2d 159, 163 (7th Cir. 1987)). Trustee used the hearing to present the facts necessary for the court to determine whether Trustee exercised his sound business judgment with the terms of this compromise. In re 3D Resorts-Bluegrass, LLC, 2013 WL 6019117 (Bankr. W.D. Ky. 2013) (citing In re Dalen, 259 B.R. 586 (Bankr. W.D. Mich. 2001)). If he did, Trustee's decision is entitled to deference. In re Equine Oxygen Therapy Res., Inc., 2015 WL 1331540 (Bankr. E.D. Ky. 2015).

## II. The motion to strike

On June 4, 2015, Mason filed a statement in support of MDA's objection to the renewed joint motion to compromise. The statement counters Trustee's position, based on Mason's failure to renew his objection or appear at the hearing, that Mason abandoned his objection. Mason states that he did not abandon his objection but is merely letting MDA fight the fight in order to conserve resources of the MDI estate. Trustee moved to strike the statement, finding it untimely. Motions to strike are covered by Federal Rule of Procedure 12(f), adopted into bankruptcy practice by Bankruptcy Rule 7012. A decision to strike is at the court's discretion. Operating Eng'rs Local 324 Health Care Plan v. G & W. Constr. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (citing Dassault Systemes, SA v. Childress, 663 F.3d 832, 846 (6th Cir. 2011)).

---

[4] The court may hereafter refer to the second motion as a renewed motion.

The court will deny the motion to strike. A review of MDA's objection to the motion for reconsideration also references MDI as an objecting party. MDI is hanging on MDA's coattails: to the extent MDA succeeds, MDI succeeds. Conversely, MDI is willing to fail if MDA fails. Mason is not attempting to interject new or additional arguments, merely to clarify that he is still attached to MDA's hip. The court therefore finds no reason to strike this statement of clarification.

### III. Admissibility of deposition transcripts filed by MDA

Prior to the evidentiary hearing, MDA filed 1700+ pages of materials, mainly deposition transcripts. According to the notice of filing, it was unclear whether any or all would be introduced at the hearing or merely relied on in post-hearing briefs. At the hearing, no exhibits were admitted into evidence by the court, although various documents were used during the hearing and, at the conclusion of the hearing, MDA submitted its previously filed documents for admission. This resulted in arguments concerning MDA's ability to rely on documents that were part of the record but not admitted into evidence. The court will treat this as an objection to admission of MDA's documents filed prior to the hearing.[5]

Federal Rule of Evidence 102 provides that the rules of evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Federal Rule 611 gives the court some latitude in the examination of witnesses and presentation of evidence for the purpose of making the process "effective for determining the truth" and to "avoid wasting time." Fed.R.Evid. 611(a)(1), (2). Under Rule 402, relevant evidence is admissible.

Federal Rule of Civil Procedure 32 governs the use of depositions in court proceedings. It provides

> (1) *In General.* At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying;
> (C) the use is allowed by Rule 32(a)(2) through (8).

The decision to allow use of a deposition is within the discretion of the court. In re Air Crash at Lexington, Ky., 2008 WL 2954971 (E.D. Ky. 2008) (citing Heights Driving Sch., Inc. v. Top Driver, Inc., 51 Fed.App'x 932, 940 (6th Cir. 2002)). The party seeking admission bears the burden of proof. Air Crash, 2008 WL 2954971 at * 3 (citing Allgeier v. United States, 909 F.2d

---
5 The court notes that none of the parties have raised this issue in the post-hearing briefs.

869 (6th Cir. 1990)). The court finds that MDA met its burden and will overrule any objections to admission of MDA's exhibits.

MDA seeks to use the depositions against Trustee, a party who was present or represented at the depositions. MDA is seeking to use the depositions in the same manner as live testimony. Third, the court finds grounds under Rule 32(a)(2), at a minimum, to permit use of the depositions. Further, MDA's Notice of Filing clearly established it intended to rely on the documents it filed before the evidentiary hearing and filed them with the court. As the court pointed out during the hearing, this clearly saves time and expense of personal testimony regarding each transcript, thereby promoting the goal of Rule 611(a)(2). Additionally, MDA's use of the transcripts is not to prove or disprove the truth of what is contained therein, but to identify evidence that shows whether Trustee exercised sound business judgment in the compromise. For example, if Trustee was compromising a red light/green light personal injury case, it would be relevant to consider whether Trustee contacted witnesses identified in a transcript or testimony. This would be relevant <u>not</u> for determining the truth of the color of the light as those witnesses might testify, but to determine the reasonableness of Trustee's decision to settle in speaking with them prior to deciding on an appropriate settlement.

IV. **Admissibility of documents used by movants**

At the conclusion of the hearing, movants sought admission of their exhibits and other documentary evidence. The court did not formally rule on the request. Approximately eleven documents were used during the hearing, including sealed tax returns of Debtor and Mrs. Myers. Voluminous other documents have been submitted under seal. The court will admit the documents. And, as discussed above, their purpose is not to prove factual matters asserted by deponents, but as a foundation establishing Trustee's base of knowledge for the compromise. The court does not conclusively determine the validity of the many matters in the <u>Myers</u> case. Rather the court determines whether Trustee's determination is sufficiently informed and logical to be within the allowable range of business judgment.

## **THE JOINT MOTION TO COMPROMISE**

I. **The previous opinion**

In its January 29, 2015 opinion, Trustee convinced the court that his probability of success was speculative and therefore settlement was in the best interest of the estate. As noted below and in the previous opinion, the question is whether the compromise is fair and equitable, but that is determined by a standard that is deferential to Trustee's business judgment. The court considered Trustee's pending litigation with Mrs. Myers, Debtor, and third parties in making its determination. Trustee also persuaded the court that the complexity, expense and time factors weighed in favor of the compromise. Although unnecessary, Trustee buttressed his position on this point. It is now apparent that additional discovery would be necessary in multiple lawsuits, thereby increasing the time and expense needed to bring the matters to conclusion.

Trustee, however, failed to provide sufficient information to the court on the remaining two considerations, forcing the court to deny approval of the compromise. On the collectability item, Trustee relied on information that was not before the court, leaving the court unable to assess the prudence of the compromise. Additionally, the parties had a disagreement about whether a § 727 action can be compromised. Although the court sided with Trustee, and found no outright prohibition, it adopted an additional consideration focused on the public interest. Since that consideration was unknown prior to the court's decision, neither party had an opportunity to adequately address it. Consequently, the court denied the compromise with the understanding that the compromise could be renewed on the same terms.

Days after the court's opinion, movants presented the same compromise to the court, this time with evidence to support the additional element adopted and the identified shortcomings. Although MDA presents numerous arguments regarding Mrs. Myers' claims, those issues are not before the court. The rehearing was limited to issues focused on collectability and the § 727 action, as outlined in the opinion on the original motion. Paragraph eleven of the renewed motion identified these same issues, as did the court's motion granting the rehearing. (Order Gr. M. Rehearing, ECF No. 731)

Even if MDA could argue otherwise, and bring Mrs. Myers' claims back to the forefront, it would be for naught because there is simply nothing new added. In the first opinion, this court reviewed the nature of Mrs. Myers' claims to Double M and against the estate in considering Trustee's probability of success. It considered the strengths and weaknesses of those claims, as well as the potential impact on the estate. The court will not revisit these determinations, nor does it need to reconsider its conclusion that the complexity, time and expense weigh in favor of approval of the compromise. This opinion focuses solely on the specific issues before the court, collectability, the interest of creditors, and the interest of the public.

## II. Witness credibility

Trustee was the sole witness to testify at the May 5, 2015 hearing. He was wholly credible. Trustee has been an attorney since 1992, almost exclusively in the bankruptcy field. He has been a chapter 7 trustee since 2003. He also represents debtors, including individual and commercial chapter 11 debtors. His bankruptcy experience is extensive. In his work, he has compromised innumerable claims, including those involving Ponzi schemes and fraud.

The court is fully convinced that Trustee is fittingly apprised of the information obtained in discovery, including information exchanged as part of the mediation process before The Honorable Mary Ann Whipple. Based on his testimony, the court is persuaded that he is knowledgeable of the evidence collected, the allegations and law involved on the underlying issues, and competently assessed the facts and law before entering into this compromise.

### III. The standard

The fundamental question before the court is whether the proposed compromise is fair and equitable. Hindelang v. Mid-State Aftermarket Body Parts Inc. (In re MQVP, Inc.), 477 Fed.App'x 310, 313 (6th Cir. 2012) (unpublished). As stated in the previous opinion, the Supreme Court advises

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself [or herself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possibilities of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Rankin v. Brian Lavan and Assoc., P.C. (In re Rankin), 438 Fed.App'x 420, 426 (6th Cir. 2011) (unpublished) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414-424-25 (1968)). From this, the Sixth Circuit adopted a four-part inquiry for compromises, requiring a court to consider (1) the probability of success if litigated, (2) the complexity, expense, delay, etc. of litigation, (3) collectability concerns, and (4) the interest of creditors, including their reasonable views on the compromise. Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC), 728 F.3d 567, 576 (6th Cir. 2013) (citing Bard v. Sicherman (In re Bard), 49 Fed.App'x 528, 530 (6th Cir. 2002) (quotation omitted)).

The initial burden of proof rests with the proponent of the compromise, who must demonstrate that the settlement is in the best interest of the estate. Gen. Motors Acceptance Corp. v. Flynn (In re Midway Motor Sales, Inc.), 407 B.R. 442 (B.A.P. 6th Cir. 2009) (citing Velde v. First Nat'l Bank & Trust (In re Y-Knot Constr., Inc.), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007)). When a party objects to a compromise, it "must support the objection by a preponderance of the evidence." In re LPN Healthcare Facility Inc., 531 B.R. 730 (Bankr. S.D. Ohio 2015) (citing Treinish v. Topco Assoc., Inc. (In re AWF Liquidation Corp.), 208 B.R. 399, 400 (Bankr. N.D. Ohio 1997)).

A trustee is generally afforded some deference in his decision to compromise. MQVP, Inc., 477 Fed.App'x 310, 313 (citations omitted).

The Trustee's decisions are somewhat protected by the "business

> judgment rule," which could be better described as a rebuttable presumption rule. *See* In re Dalen, 259 B.R. 586 (Bankr.W.D. Mich.2001) (the application of the business judgment rule was addressed with respect to the Rule 9019(a) approval of a settlement). This rule protects a disinterested trustee so long as any decision falls within the range of what an informed businessman would have rationally decided under the circumstances. This Court is always reluctant to disregard the business judgment of the Trustee with respect to the settlement or compromise of the bankruptcy estate's claims, as it is that Trustee who is more knowledgeable of the strengths and weaknesses of their cases. Moreover, this agreement does not have to be an agreement the Court would enter, but must simply be above the lowest point in the range of reasonableness. In re Carson, 82 B.R. 847, 852 (Bankr.S.D.Ohio 1987).

In re Equine Oxygen Therapy Resources, Inc., 2015 WL 1331540 (E.D. Ky. 2015) (slip copy) (citing In re Batt, 488 B.R. 341, 353 (Bankr. W.D. Ky. 2013)). It is not the province of this court to substitute its judgment for that of the trustee. In re Schuerman, 2008 WL 336393 (Bankr. N.D. Ohio 2008) (citing McGraw v. Yelverton (In re Bell & Beckwith), 87 B.R. 476, 478 (N.D. Ohio 1988)).

### A. Collectability

MDA's post-hearing brief and sur-reply do not make a single argument concerning collectability but instead focus on the § 727 action, which the court interprets as concession on collectability. Regardless, Trustee did establish the foundation necessary for the court to find he adequately considered the collectability factor in entering into this compromise.

As trustee testified, nearly four years have been spent combing through Debtor's financial affairs. Debtor testified under oath at several 341 exams. Trustee worked with Debtor's original bankruptcy counsel in obtaining documents. Not fully confident in relying on Debtor alone, Trustee independently subpoenaed bank records[6] and used forensic accountants in conducting his investigation. (Order Gr. App. Emp. Accountant, ECF No. 154) He engaged in extensive discovery, resulting in thousands and thousands of pages of documentation. He deposed various individuals, including a multi-day deposition of Debtor's financial advisor, Scott Snow.

When the parties decided to mediate, Trustee put Debtor and Mrs. Myers through debtor's exams and both were deposed. He not only looked into prepetition financial affairs, but also looked at their joint postpetition financial situation. Trustee examined the Myerses loans, notes and mortgage balances, their tax returns, bank statements and bills in order to assess what

---

6 A suggestion was made that Trustee subpoenaed over 50 financial institutions. (Hearing Tr. from May 5, 2015 at 115:14-15)

9

income was flowing into their household and what expenses were being paid. Based on his testimony, it appears that, postpetition, Debtor and his wife have been living on IRA withdrawals and loans from friends and/or family. Trustee indicated that their tax returns do not show income from wages, interest, dividends, or investments and that the bulk of their business activity has resulted in a loss on their income tax returns. In other words, there is no proof of an income flow. He further testified that he knows of no other non-exempt assets that can be brought into the estate. Consequently, the court can find no reason to quibble with Trustee's conclusion that, if he were to litigate and eventually obtain a judgment against Debtor or his wife, collectability would be a concern. The court finds that Trustee met his burden of proof, demonstrating that if he were to obtain a judgment against Debtor or Mrs. Myers, collecting on that judgment may leave him with nothing but greater fees and expenses.

### B. Interest of the public in the compromise of the § 727 action

MDA vehemently argues that there is no basis for Trustee to compromise his § 727 discharge action against Debtor. It contends that Trustee has come too far to raise a white flag and that the case is virtually a slam dunk. Trustee disagrees.

In the first opinion, the court declined to prohibit settlement of § 727 actions. It did, however, expand the "fair and equitable" test for compromise to include a fifth element, consideration of the "public interest in proper administration of the bankruptcy laws," when a trustee seeks to settle a § 727 action. *See* Jacobson v. Robert Speece Prop., Inc. (In re Speece), 159 B.R. 314, 317 (E.D. Cal. 1993). Since the § 727 action is MDA's primary focus, the court's views on this argument also impact MDA's interest in the settlement as a creditor.

MDA focuses great attention on Debtor's character, especially in light of Trustee's unfavorable perception of Debtor:

> Mr. Myers' credibility is a fundamental part of it. No one
> believes that Mr. Myers is very truthful very much of the time.
> And so anything he says is taken with a great deal – a very
> large grain of salt. And so anything he has has (sic) to be
> backed up by documents.

(Hearing Tr. from May 5, 2015 at 97:20-24, ECF No. 772) This clearly fed directly into MDA's perception of Mr. Myers. A fundamental goal of bankruptcy is to provide 'honest but unfortunate debtor[s]' with a 'fresh start,' Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz), 718 F.3d 582 (6th Cir. 2013) (quoting Grogan v. Garner, 498 U.S. 279, 291 (1991)). Conversely, the public does not want to see dishonest debtors receive discharges. MDA clearly believes Debtor falls in the latter category.

Preserving discharges for the honest is not the sole purpose of the bankruptcy system. Bankruptcy is also intended to "ensure the 'equality of distribution among creditors of the debtor.'" Grant, Konvalinka & Harrison, P.C v. Still (In re McKenzie), 737 F.3d 1034, 1042

10

(6th Cir. 2013) (citing Union Bank v. Wolas, 502 U.S. 151 (1991) (internal quotation marks omitted)). It also seeks to 'minimize the injury to creditors.' Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.), 555 F.3d 231, 248 (6th Cir. 2009) (citing In re The Harwald Co., 497 F.2d 443, 444 (7th Cir. 1974)). In furtherance of these goals, '[a] trustee has a duty to conserve the assets of the estate to the extent possible where, as here, there are finite assets available to fund the cost of litigation.' Monus v. Lambros, 286 B.R. 629 (N.D. Ohio 2002) (quoting In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990)). This case has been highly contentious and one court noted a "particularly strong" benefit to the estate when compromise is possible. Boyd v. Engman, 404 B.R. 467, 481 (W.D. Mich. 2009); *see also* In re Maynard, 269 B.R. 535, 542 (D. Vt. 2001) (stating "there is a public interest in encouraging just, speedy, inexpensive, and final resolution of [§ 727] disputes").

When bankruptcy goals collide, determination of the public interest is challenging. But Trustee ably summarized his thoughts when MDA asked, in light of Debtor's character, whether Debtor should be forced to come to court and allow the court to assess his credibility, rather than "gift" him a discharge. Trustee responded:

> I don't think the discharge is a gift. And I don't believe it is
> a case that I have a high probability of success with. Regard-
> less of what you may think of Mr. Myers and regardless of
> what I think of Mr. Myers, what you think is irrelevant. It's
> what the man in the black robe thinks is relevant and what I
> can prove with evidence and documents. And it's a tough
> case.

(Hearing Tr. from May 5, 2015 at 98:6-13, ECF No. 772) Tough cases are a reason that compromise is available: '[t]he purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims . . . . The law favors compromise and not litigation for its own sake . . . .' Fishell v. Soltow (In re Fishell), 47 F.3d 1168 (6th Cir. 1995) (unpublished) (quoting In re A & C Prop., 784 F.2d 1377, 1380-81 (9th Cir. 1986)).

Trustee's history of the § 727 action is material. This case was litigious from the outset, with layers of complexity involving the state court litigation, MDI's bankruptcy, and issues involving PetBrands, Inc., a company in which Debtor was majority shareholder. Trustee's initial review of Debtor's affairs left him with many suspicions, resulting in a continuation of the deadline to object to discharge.[7] Thereafter, Trustee filed another extension motion. At the hearing on that contested motion, Trustee sought an additional six months from the hearing date of February 27, 2012. The court granted the motion, in part, electing to extend the deadline to June 1, 2012, not the full six months requested. When that deadline neared, Trustee testified he felt forced to "fish or cut bait," so he filed the § 727 action based on his suspicions without the full benefit of discovery. He directly stated that he "[n]ever felt as though I had a sufficient case." (Id. at 14:14-15) With the benefit of years of discovery and digging, he has not found a

---
7 The initial deadline was August 15, 2011 and the extension set a new deadline of December 15, 2011.

11

"smoking gun." (Hearing Tr. from May 5, 2015 at 67:1-3)

When he considered settling the § 727, Trustee said he considered the integrity of the system. He testified:

> Discharges aren't about – they aren't so much about money.
> They're about does the Debtor deserve a discharge. Is he
> an honest Debtor. And so you have to take that into account
> and look at what the disclosures were, what the level of coopera-
> tion was, did the Debtor comply with all of his obligations or
> her obligations under (sic) Bankruptcy Code with respect to the
> 727 action, separate from the economic aspect of it.

(Id. 8:9-17)

Debtor has been cooperative, providing numerous documents to Trustee and appearing for multiple 341 meetings. MDA's main contention is that Trustee has enough evidence to move forward on a theory that Debtor concealed an ownership interest in PC, and outlines its evidentiary foundation. Trustee claims that the case is weak and based on circumstantial evidence. (Id. at 113:14-18) MDA's cross-examination of Debtor revealed that Trustee had found no flow of income suggesting an ownership interest, no W-2 forms, no wire transfer records, no 1099, and no checks or cancelled checks. There were "[n]o stock certificates, subscriptions, no options, no sweat equity type deals." (Id. at 26:5-6) There was no corporate resolution or appointment of Debtor. Debtor did work for the company and received some compensation for his services. Trustee acknowledges that there were suggestions of ownership, including by Scott Snow, Debtor's financial advisor, but no proof of actual ownership. (Id. at 25: 8-9) Even Scott Snow testified that he had never seen any documentation of ownership of PC by Debtor. (Scott Snow Dep. Tr. at 550:6 – 551:24, ECF No. 751)

These allegations also form the basis of a separate adversary by Trustee against PC and its owners. DeGirolamo v. Primary Colors Design Corp. (In re Myers), Case No. 11-61426, Adv. No. 13-6067. When asked about the likelihood of success in that action, which is based on the same allegations, Trustee estimated it was under fifty percent (50%). (Hearing Tr. from May 5, 2015 at 28:7) Moreover, it would require additional discovery, including depositions of the owners/principals. Trustee summed his cost/benefit analysis of the Primary Colors issues as follows:

> I think that given any possibility of success of below 50
> percent, given the cost of trying to get there, I don't be-
> lieve it is the best interests of the creditors to pursue that
> claim with respect to the discharge case or the adversary
> itself at this point. I think I would net less money pur-
> suing a Primary Colors case. And I don't believe I have
> enough evidence to take Mr. Myers's discharge away

12

based on what we know now about Primary Colors.

(Hearing Tr. at 31:3-15)   This testimony speaks to the goals previously discussed as the foundation for the public's interest.   In this case, Trustee has no direct evidence of any dishonesty and believes that litigation would result in injury to creditors.   In light of this, and Trustee's investigation into Debtor's financial affairs, the court cannot say that Trustee has inappropriately exercised his discretion in determining that pursuit of nondischargeability does not serve the public interest.

MDA claims that on cross-examination, Trustee deflected specific accusations raised against Debtor by referring to him as a "sales guy."   (MDA Post-Hearing Brief at 8, ECF No. 8) Trustee has been through numerous 341 meetings with Debtor, as well as a debtor's examination during the mediation process, and is in a position to characterize Debtor based on his impressions.   MDA also makes much of the fact that Debtor has no records related to PC.   As Trustee pointed out, if Debtor doesn't have an ownership interest, he would not expect there to be records to find.   (Id. at 124:11-12)

According to MDA, Trustee could easily succeed on his count under 11 U.S.C. § 727(a)(2)(A) for fraudulently transferring $500,000.00 to his wife.   MDA claims that her defense that it was "her money" is patently unsustainable.   Trustee's theory of the case, that Debtor was the equitable owner of funds titled solely in the name of Debtor, is in accord. Trustee does not subscribe to the theory that the money was hers, either.   (Id. at 38:9-24) However, that is one of the difficulties of the case because Trustee's tracing reveals that the $500,000.00 originated from a Karen Myers investment account.   (Id. at 77:13-15)   Trustee stated that "[f]or me to win and succeed . . . I would have to have the Court rule that Marty Myers is the equitable owner of Karen Myers's account."   (Id. at 80:14-17)

Moreover, Mrs. Myers contends that she made the transfer from the joint account, not Debtor.   (Ans. of Karen Myers in DeGirolamo v. Myers (In re Myers), Case No. 11-61426, Adv. No. 13-6064, ¶ 8, ECF No. 24)   Trustee admitted that he does not have evidence that Debtor made the transfer.   (Hearing Tr. 118:8-18) As an additional defense, Mrs. Myers also contends that the bulk of those funds were used to satisfy Debtor's obligations.   (Ans. of Karen Myers ¶ 34, ECF No. 24)   Trustee maintains his chance of success on these claims may be close to fifty-percent.

Finally, MDA again raises the argument that Debtor is contributing nothing to the settlement in exchange for release of the § 727 complaint.   This is not entirely accurate because Mrs. Myers is giving up her rights to contested assets, so there is a contribution flowing to the estate on Debtor's behalf.   Not all courts require a monetary payment with a compromise. Palmer v. Hayden (In re Hayden), 246 B.R. 795 (Bankr. D.S.C. 1999) (debtor stipulated as to § 523 nondischargeability in exchange for dismissal of § 727 complaint).   Moreover, the court considered, and rejected, MDA's argument in its previous opinion.   (Memo. of Op. at 10, ECF No. 703)

13

Altogether, the court is persuaded that the public interest in the proper administration of the bankruptcy system has been served and the settlement will not compromise the integrity of the system. Trustee exercised reasonable business judgment in electing to settle the § 727 action. Although he may not believe that Debtor is entirely credible, Trustee undertook a lengthy and comprehensive investigation of Debtor's financial affairs and has not identified any hard evidence of dishonesty. Considering the difficulties that may arise in stringing together a circumstantial case, Trustee's decision to stop the bleeding of administrative expenses from the estate furthers the goal of making a distribution without further injury to creditors, thereby supporting the public interest.

### C. Creditors' reasonable views of the compromise

The court must consider "the interest of creditors, including their reasonable views on the compromise." Greektown Holdings, LLC, 728 F.3d 567, 576 (citation omitted). The court touched on this consideration in the previous opinion. To the extent it was left open in light of the outstanding § 727 issues, the court finds that MDA's views of this compromise are not sufficient to override the Trustee's reasonable conclusion.

Since MDA is the largest creditor, its views of this compromise are pronounced but there are other creditors waiting for a distribution, including priority tax claimants and other unsecured creditors. Moreover, MDA's history with Debtor is long and grisly, as the parties have been in litigation for ten years. Although MDA may be willing to sustain a prolonged fight, MDA's interest and view of this compromise is not the sole consideration for the court, which also must consider the other creditors.

MDA's post-hearing brief presents a colorable basis for the § 727, and other, actions against Debtor. This was not lost on Trustee, who also had suspicions, which he spent hundreds of thousands of dollars investigating. He now has concluded that the additional time, expense, complexity, ability to collect, and vagaries of litigation are not in the best interest of the estate. The court finds that his conclusion is reasonable, will benefit the estate, and does not debase the bankruptcy system.

Notably, the foundation for MDA's suspicions reside almost exclusively in communications from one person, Scott Snow. Trustee was fully aware of his testimony. Trustee's decision was based on more than a single person's deposition: it was based on 341 meetings with Debtor, thousands of pages of documents from discovery in multiple adversaries, depositions, and other examinations of Debtor and Mrs. Myers. The suspicions of concealed assets and/or interests were not limited to PC, but extended to other entities, including Marmat International Ltd. and Devonshire Fund, LLC. Not only did Trustee fail to unearth anything related to PC, he also was unable to develop sustainable cases related to these entities on similar allegations.

On a final note, the compromise is not the end for MDA. MDA is free to pursue the § 727 action against Debtor filed on December 15, 2011. That proceeding was stayed pending

14

the outcome of Trustee's § 727 action.

## CONCLUSION

Trustee, Debtor and Mrs. Myers, with the assistance of The Honorable Mary Ann Whipple, worked diligently to accomplish what none thought possible: a compromise. Upon presentation of that compromise to the court, MDA (and MDI) objected with vehemence. On the first attempt, the court found Trustee had not given the court a factual foundation to fully assess whether the compromise was fair and equitable. Although Trustee demonstrated that the complexity of the issues and time, expense and difficulty of litigation favored compromise, he did not make a similar showing on the issues of collectability or the creditors' interest, driven partially by the § 727 action. In its opinion, the court found that it would consider compromise of a § 727 action but would require the parties to discuss whether it was in the public interest.

Movants sought reconsideration/rehearing of the exact same compromise, which the court granted. At an evidentiary hearing, Trustee testified concerning his decision to enter into this compromise. MDA cross-examined Trustee. Following the hearing, the parties submitted post-hearing briefs in support of their positions. After setting forth his views of Debtor and Mrs. Myers' collectability, and his reasons for deciding to compromise the dischargeability case against Debtor, and the public's interest, the court decided it had sufficient facts to consider whether to approve the compromise. After weighing all the considerations, the court concludes that Trustee's conclusion that the joint compromise is fair and equitable and in the best interest of the estate is reasonable. Finding no procedural irregularities that impinge due process, the court approves the compromise by separate order to be entered directly.

So ordered.

#     #     #

**Service List:**

Joel K Dayton
Randolph L. Snow
Chrysanthe E. Vassiles
Black, McCuskey, Souers and Arbaugh
220 Market Ave., South, Suite 1000§
Canton, OH 44702

G. Christopher Meyer
Peter R. Morrison
Squire Patton Boggs (US) LLP
127 Public Square, Suite 4900
Cleveland, OH 44114-1304

John R. Gall
Aneca E. Lasley
Heather L. Stutz
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 S. High St.
Columbus, OH 43215

Marc Merklin
Kate M Bradley
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, OH 44311

Rhiel & Associates Co LPA
Susan L. Rhiel
394 East Town Street
Columbus, OH 43215